ESTATE OF BLANCHE B. GILBERT, DECEASED, GIRARD TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3562. Promulgated March 21, 1945.

*Kenneth W. Gemmill, Esq.,* for the petitioner.
*William D. Harris, Esq.,* for the respondent.

#### OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency in estate tax against the estate of Blanche B. Gilbert, deceased, of $7,607.74. In his determination the Commissioner made three adjustments to the estate tax return which was filed by the executor. One of these was the disallowance of a deduction of $77,332.27 which had been claimed on the return as a bequest exclusively to charity. This is the only one of the Commissioner's adjustments that is contested

by the petitioner. Petitioner assigns error as to this adjustment as follows:

(a) The Respondent erred in computing the net estate of the decedent in failing to allow as a deduction from the value of the gross estate the value of the interest, amounting to at least $77,332.27, bequeathed under the Last Will and Testament of Blanche B. Gilbert, deceased, to a Trustee to be used by such Trustee exclusively for charitable purposes and with no part of the activities of such Trustee consisting of carrying on propaganda or otherwise attempting to influence legislation.

The petition also contains allegations that the estate is entitled to additional deductions for administration expenses, including the cost of this proceeding, incurred since the filing of the Federal estate tax return. It is agreed by the parties that any additional deductions to which the estate is entitled on these latter accounts will be embodied in a recomputation under Rule 50. The facts have been stipulated and are hereby found as stipulated. The following statement of some of these facts will suffice for purposes of this opinion.

Petitioner is the duly qualified and acting executor under the last will and testament of Blanche B. Gilbert, deceased. As executor of the estate petitioner filed an estate tax return with the collector of internal revenue at Philadelphia, Pennsylvania, on March 6, 1942.

Blanche B. Gilbert, hereinafter described as the decedent, died November 22, 1939, leaving a handwritten will, unattested by witnesses, which will was admitted to probate by the Register of Wills of Philadelphia County, Pennsylvania, on December 8, 1939, and on the same day letters testamentary were granted to the petitioner.

Decedent's will provided for annuities of $50 per month for her sister, Victoria B. Lawton, and her niece, Elise Linck Pennock; and decedent directed that "the remainder I want to spend for 'iron lungs' and given to hospitals that need them." In another part of her will decedent directed that the sum of $50 given to the annuitants "at their death it revert to the estate for 'iron lungs' for hospitals. For reasons of my own I leave nothing more to my family. The remainder I want 'iron lungs' bought for hospitals that need them."

On December 7, 1939, a niece of decedent applied to the Surrogate Court of Essex County, New Jersey, for letters of administration, and on that date, together with the Citizens National Bank & Trust Co. of Caldwell, New Jersey, was granted such letters, upon the representation that the decedent was domiciled in Essex County, New Jersey, and had died intestate. Decedent's executor, this petitioner, thereupon filed its petition with such Surrogate Court contesting the granting of letters of administration on the ground that decedent was not domiciled in Essex County, New Jersey, but in Philadelphia County, Pennsylvania. The decree of such Surrogate Court thereafter set aside the granting of administration on the ground that

decedent was not a resident of New Jersey, and its decree, on appeal, was affirmed by the Prerogative Court of New Jersey on June 6, 1941.

Petitioner, as executor of decedent's estate, on or about December 2, 1941, entered into a written agreement, subject to the approval of the Orphans' Court of Philadelphia County, to settle all outstanding controversies in connection with the decedent's estate as outlined in the agreement. By the terms of the agreement it was agreed that, since the parties desired to compromise, settle, and adjust all disputes and litigation, the parties agreed that no appeal would be taken from the action of the Register of Wills of Philadelphia in probating the will of Blanche B. Gilbert, that administrators appointed by the courts of New Jersey would be released from all liability in connection with other administration and administration fees paid, and that, subject to the payment of certain other fees and expenses, one-fourth of the balance plus $875 should be distributed among the heirs and next of kin and three-fourths of the balance, less $875, should be distributed for the uses and purposes set forth in the will.

Petitioner filed a petition with the Orphans' Court of Philadelphia County praying for leave to consummate said settlement, which leave was granted by the court on December 29, 1941.

Petitioner duly filed its account in the office of the Register of Wills of Philadelphia County, and on July 15, 1942, the auditing judge of the Orphans' Court filed an adjudication of this account, wherein he made awards in accordance with the settlement agreement, to wit, approximately one-fourth of the estate to the parties contesting the will and the balance in accordance with the will.

Petitioner, as executor of the decedent's estate, filed on March 6, 1942, a Federal estate tax return in which a deduction was claimed in schedule N of the fund for iron lungs, less inheritance tax, amounting to $77,332.27, as a charitable bequest. On September 25, 1942, petitioner was notified by the revenue agent in charge that this deduction was disallowed.

On March 26, 1943, petitioner filed in the Orphans' Court a petition to open the adjudication of July 15, 1942, in order to determine whether petitioner could purchase and give iron lungs only to hospitals operated as purely public charities, or whether it was permissible to purchase such iron lungs for hospitals operated for the private benefit of the owners. The Orphans' Court opened the adjudication and filed a supplemental adjudication on May 17, 1943, modifying its previous award so as to provide that the bequest for iron lungs could be used only for purchasing such devices for hospitals organized and operated exclusively for charitable purposes.

"Iron lungs" is the popular name for devices otherwise known as "respirators." They are cylindrically shaped devices used principally for patients suffering from infantile paralysis who are unable to

breathe because of paralysis of the muscles of the chest. The patient is placed in the respirator, which operates in such a way as to cause the patient to breathe despite the paralysis.

Petitioner, as executor, purchased respirators or iron lungs for the hospitals mentioned in the schedule of distribution filed by it. Each of these hospitals is owned and operated by a Pennsylvania corporation organized and operated exclusively for charitable, scientific and educational purposes, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation.

In this proceeding two questions growing out of the above stated facts have been submitted to us for decision. They are: (1) Was the bequest by decedent to the executor of her residuary estate to purchase iron lungs for "hospitals that need them" a charitable bequest deductible from gross estate pursuant to section 812 (d) of the Internal Revenue Code? (2) Was the amount received by the executor acquired by inheritance and deductible under section 812 (d), or was such amount acquired by purchase and not so deductible where the next of kin of decedent threatened to contest decedent's will on the ground of testamentary incapacity and a settlement agreement was arrived at between the executor, the Girard Trust Co., and the next of kin?

We shall first discuss and decide question (1), for it represents respondent's primary contention.

Briefly stated, respondent's position is that the will of decedent was indefinite in its terms in respect to the bequest of the residuary estate for the purchase of iron lungs, and that under its terms the executor might have used all or a part of the residuary estate for such purchases for use in hospitals which were privately owned. Therefore, argues the Commissioner, because of this indefiniteness and uncertainty, no deduction is allowable to the estate as a bequest to charity under the provisions of section 812 (d) of the Internal Revenue Code, printed in the margin.[1]

---

[1] SEC. 812. NET ESTATE. [As amended by sec. 408 (a), Revenue Act of 1942.]

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return), to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, \* \* \*

Petitioner, on the other hand, contends that, if it be assumed that decedent's will was ambiguous, there was no obligation on the executor to undertake to construe the will and make distribution accordingly; but, on the contrary, it was the duty of the executor to have the will construed by the court before making distribution and then to distribute as the court should direct, or run the risk of surcharge. Petitioner points out that it did go into the Pennsylvania court of proper jurisdiction and have construed the language in the will which read, "the remainder I want to spend for 'iron lungs' and given to hospitals that need them." Petitioner further points out that the Orphans' Court of Philadelphia County, in construing the language quoted, among other things, said:

* * * The word "hospitals" ordinarily connotes a charitable institution, and in common parlance is usually so regarded, for when people mean to refer to a hospital, carried on for private profit, the same is usually termed "a private hospital". Counsel for the executor cites Bouvier's Law Dictionary, 8th Ed. 1914, which defines a hospital as a "class of corporations called 'eleemosynary' or 'charitable.'" That this is the sense in which the testatrix used the word "hospitals" seems confirmed by the words for hospitals "that need them". The need that she had in mind was evidently the inability of charitable institutions to purchase iron lungs necessary to serve the public. It is hard to believe she had in mind institutions conducted for private profit. Increasing profits of such institutions by supplying equipment would not be a matter of concern to her. The auditing judge therefore concludes that the bequest was intended to be limited to charitable institutions.

Petitioner contends that, the court of Pennsylvania of proper jurisdiction having thus construed decedent's will, we are bound by this construction, citing *Freuler* v. *Helvering*, 291 U. S. 35; *Blair* v. *Commissioner*, 300 U. S. 5; *Henricksen* v. *Baker-Boyer National Bank*, 139 Fed. (2d) 877; and *Estate of George H. Balzereit*, 46 B. T. A. 959.

The Commissioner submits that, since there was present under the terms of the will the right in the executor to distribute the bequest either to charitable or noncharitable hospitals, the deduction is not allowable under section 812 (d). He contends that, in deciding whether the bequest was exclusively for charity so as to be deductible under 812 (d), we are not bound by what the Orphans' Court of Philadelphia County has decided in construing the will, that the question whether the bequest is deductible is a Federal question, and that the decision of the Orphans' Court is "manifestly not binding upon the Tax Court." Respondent on this point cites *United States* v. *Pelzer*, 312 U. S. 399; *Helvering* v. *Stuart*, 317 U. S. 154; *Susan Young Eagan et al., Executors*, 17 B. T. A. 694; reversed on other grounds, 43 Fed. (2d) 881.

Even if we assume, as respondent contends, that the construction of the will as decided by the Orphans' Court of Philadelphia County is not binding upon us, the result is the same. We construe the pro-

visions of the will providing for the purchase of iron lungs for "hospitals in need" as meaning only public hospitals which are not operated for private profit. As we have already pointed out, the Orphans' Court of Philadelphia County so construed the will, and the executor purchased the iron lungs only for public hospitals in need of them. We see no warrant for disturbing this construction of the will, even if it be assumed that we have the power to do so in applying the statute which we have here to construe. Such construction accords with our own. We hold that decedent's bequest for the purchase of these iron lungs for hospitals in need of them is deductible, subject to the limitations hereinafter set out, as a bequest to charity under the provisions of section 812 (d).

Respondent's next contention is that, even though we should hold that the bequest in question was to charity within the meaning of the statute, nevertheless, the part of the residuary estate which the executor acquired for the purchase of iron lungs for "hospitals in need of them" was acquired by purchase and not by inheritance and, therefore, is not deductible under the provisions of 812 (d).

Respondent submits that the next of kin of decedent were contesting the probate of decedent's will and that it was only after a compromise agreement had been entered into between them and the executor by which these next of kin received one-fourth of the residuary estate, that decedent's will, as probated, was allowed to remain undisturbed.

Petitioner now concedes that the one-fourth of decedent's residuary estate, plus $875, which was paid over to the next of kin pursuant to the compromise agreement is not deductible in arriving at the net estate. Petitioner contends, however, that the balance of the residuary estate which remained after paying the foregoing amounts to the next of kin is deductible under the provisions of section 812 (d), and it cites in support of its contention *In re Sage's Estate* v. *Commissioner*, 122 Fed. (2d) 480 (certiorari denied, 314 U. S. 699), affirming 42 B. T. A. 1304; *Thompson's Estate* v. *Commissioner*, 123 Fed. (2d) 816, affirming B. T. A. memorandum opinion. We think the authorities cited sustain petitioner's contention.

In support of his contention that the charity in question was acquired by purchase and not by inheritance, respondent relies principally on our decision in *Estate of Frederick F. Dumont*, 4 T. C. 158, now on review, C. C. A., 3d Cir. We think the facts in the *Dumont* case are clearly distinguishable from those present in the instant case. In the *Dumont* case the question involved was a certain bequest made to Lafayette College in a will which was executed less than 30 days prior to the testator's death. We held that the will was absolutely void under Pennsylvania law in so far as the bequest to Lafayette College was concerned and that the compromise agreement agreeing to the probate of the will could not give the will validity respecting the

bequest to Lafayette College. On that point, among other things, we said:

\* \* \* That will was executed less than 30 days before decedent's death; the bequest therein to Lafayette College was void—not voidable. Title 20, sec. 195, Purdon's Pennsylvania Statutes, Ann., as amended, 1943. Since the bequest was void "because the statute so declares, and for no other reason" (see *In re Hoffner's Estate, infra*), neither the probate of the will nor distribution thereunder could make the bequest valid. *Moore* v. *Gilbert*, 287 Pa. 102 \* \* \*.

We have no such condition here. No one contends in the instant case that when decedent's will was admitted to probate, notwithstanding such probate, the bequest of the residuary estate to the executor for the purchase of iron lungs for hospitals in need was void. What the next of kin were contending was that decedent lacked testamentary capacity because of her failing mental capacity, and that on that account the order probating the will should be canceled. This contest was finally settled by agreement, the contest was withdrawn, and the will was allowed to stand, the contestants receiving one-fourth of the residuary estate. There was never any adjudication by any court that the decedent lacked testamentary capacity. The will still stands and the only change was that the contestants received one-fourth of the residuary estate. The bequest to charity was valid, not void. This was essentially the same thing which took place in *In re Sage's Estate* v. *Commissioner, supra,* and *Thompson's Estate* v. *Commissioner, supra.*

For reasons we have already stated, we think the situation is altogether distinguishable from that which existed in *Estate of Frederick F. Dumont, supra.* The deduction to which petitioner is entitled under section 812 (d) is the amount of the residuary estate which remained for the purchase of these "iron lungs" after all other bequests and expenses were paid, including the amounts paid over to the next of kin of decedent under the compromise agreement. We do not understand that petitioner now contends otherwise. In the decision of this issue we hold for petitioner.

*Decision will be entered under Rule 50.*