Renner Estate.

Argued January 9, 1948. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*Robert Levin,* with him *Sidney B. Berg,* for appellants.

*Thomas A. Galbally,* with him *John J. Sullivan,* for appellees.

OPINION BY MR. JUSTICE LINN, March 22, 1948:

John Renner died April 25, 1946, leaving a will dated January 9, 1946. He was unmarried and without issue.

his nearest of kin being a nephew and a niece. He had been a retired policeman. After directing the payment of his debts he bequeathed to his nephew $1,000 and to his niece $500; to a sister-in-law he gave the proceeds of an insurance policy issued by the Police Beneficial Association. The presently important paragraphs of his will are as follows:

"FIFTH: I give, devise and bequeath unto my good friend, Mary Faiss Riesing, my home and garage at No. 1324 N. Marston Street, Philadelphia, together with the entire contents thereof, including my pets and my flower garden, absolutely.

"SIXTH: All the rest, residue and remainder of my estate, real and personal, of whatsoever kind and wheresoever situate, I give, devise and bequeath unto my executrix, hereinafter named, IN TRUST, however, for the maintenance of my pets, which I leave to her kind care and judgment, and for their interment upon their respective deaths in the Francisvale Cemetery. Upon the death and interment of the last of my pets to survive, I give, devise and bequeath my entire residue estate so held in trust unto the said Mary Faiss Riesing, absolutely and in fee.

"SEVENTH: I direct that the said Mary Faiss Riesing shall have the right to be buried in my lot in the Northwood Cemetery."

In the 8th paragraph he appointed Mary Faiss Riesing executrix. She qualified, administrated the estate and filed her account showing a residuary estate in excess of $11,900. The pets were a dog and a parrot.

At the audit, testator's nephew and niece contended that there was a trust for the maintenance and interment of the pets which was void under the perpetuities rule, that intestacy resulted, and that the residuary estate should be awarded to them. The learned auditing judge rejected these contentions and awarded the residue "to Mary Faiss Riesing in trust for the uses and purposes declared by the will of the testator, as requested in

the petition for distribution and in accordance with this adjudication." A schedule of distribution making the award in that form was approved. The nephew and the niece have appealed.

The learned court rejected appellants' contentions and held that the residuary estate vested in Mary Faiss Riesing at testator's death; that the words relied on to support the argument that the gift was contingent, specified the time of enjoyment [1] and not the time of vesting; that testator did not intend the vesting to depend on the interment of the pets. The court also noted, in support of this conclusion, that there was no gift over [2] and that appellants' contention would result in partial intestacy, against which there was a presumption. [3] Having concluded that the residue vested, it was unnecessary to deal further with the perpetuities contention.

The will and the evidence taken at the audit show that a close relationship existed between the testator and Mary Faiss Riesing, the appellee. By the 4th paragraph, the pets became her property. Testator knew that his residuary estate would amount to a large sum, because shortly before he died he was engaged in arranging to remove a sum in excess of $10,000, then kept in his house, to a safe deposit box Mary Faiss Riesing had rented pursuant to his instructions. He knew that the maintenance and interment of the pets could not possibly consume the principal and income of the residue and obviously desired to give it to Mary Faiss Riesing; he could hardly have intended the fund to accumulate in violation of the Act of April 18, 1853, P. L. 503, 20 PS 3251. The circumstances in which he made his will are controlling in ascer-

---

[1] *Hyde v. Rainey*, 233 Pa. 540, 82 A. 781; *Daugherty v. Daugherty*, 91 Pa. Superior Ct. 53.

[2] *Brown's Estate*, 289 Pa. 101, 137 A. 132; *Packer's Estate No. 2*, 246 Pa. 116, 92 A. 70; *Ramey Estate*, 108 Pa. Superior Ct. 156, 163 A. 922.

[3] *Rickenbach Estate*, 348 Pa. 121, 34 A. 2d 527; *McCauley's Est.*, 257 Pa. 377, 101 A. 827; *Waln's Estate*, 228 Pa. 259, 77 A. 458.

taining the true meaning intended to be derived from the ambiguous phraseology of his will. In resolving such ambiguity the courts resort to established rules of construction. A lawful disposition of property is preferred to a construction resulting in an unlawful disposition; a construction supporting a vested estate is preferred to one holding the estate contingent: *Shaw's Estate*, 326 Pa. 456, 191 A. 159; a construction leading to partial intestacy is to be avoided, if possible because it is presumed that this testator intended to dispose of all his property: *Duffy's Estate*, 313 Pa. 101, 169 A. 142; the absence of a gift over is an important element: compare *Brown's Estate*, 289 Pa. 101, 114, 137 A. 132.

We all agree that the estate vested in the legatee at testator's death. His will meant that she should take the residue from that time; he wished her to apply as much as she considered necessary to the care of the pets and to retain the rest for her own use. There was no trust in the sense in which that term is used in courts of equity in this Commonwealth. The entire estate, legal and equitable, passed to the legatee. There was no cestui que trust who could call her to account. There was no charitable trust. She owed no enforceable duty to anyone. If she had predeceased the testator, no successor could have exercised "her kind care and judgment," which was what testator desired.

Much [4] has been written on honorary trusts and trusts

[4] See Restatement, Trusts, sections 123, 124, 398; Bogert, Trusts and Trustees, vol. 1, sections 165, 166, p. 484 et seq. (1935); Wolfe: *Honorary Trust in Pennsylvania*, 42 Dick. L. Rev. 161 (1938); Ames: *The Failure of The Tilden Trust*, 5 Harv. L. Rev. 389 (1892); Gray: *Gifts for a Non-Charitable Purpose*, 15 Harv. L. Rev. 509 (1902); Scott: *Control of Property by the Dead*, 65 Pa. L. Rev. 527 (1917); Smith: *Honorary Trusts and the Rule Against Perpetuities*, 30 Col. L. Rev. 60 (1930); Gray: *The Rule Against Perpetuities*, 4th ed., sec. 894, p. 767 (1942); Scott, Trusts, sections 124 et seq., 128.3; Simes: vol. 2, Law of Future Interests, section 555.

The Act of May 26, 1891, P. L. 119, 9 PS 4, is entitled, "An Act legalizing dispositions in perpetuity for the care of burial places." See *Estate of Anna M. Deaner*, 98 Pa. Superior Ct. 360.

for non-charitable purposes in their relation to the rule against perpetuities, but the decision of this appeal does not require discussion of the subject.

We may add that even if we should accept appellants' contention that what they call the trust for the pets is void under the perpetuities rule, the appellants, as next of kin, would not be entitled to any part of the residue, and are therefore not parties in interest. Section 15 (c) of the Wills Act of 1917, P. L. 403, provides that unless a contrary intention appears, if a provision in a residuary clause fails or is void, the subject of the void clause "shall pass to and be divided among the other residuary devisees or legatees, if any there be. . . ." On appellants' construction, Mary Faiss Riesing would come into the enjoyment of the residue on the death and interment of the pets, if the trust were valid; if now we lift out of the residue the words creating the trust said to be void, we still find an express gift of the residue to Mary Faiss Riesing.

Decree affirmed at appellants' costs.