Estate of Julien W. Vose, Anna E. Vose, Leroy W. Vose and Donald W. Vose, Executors v. Commissioner.
Vose v. Commissioner
Docket Nos. 60869, 60888-60892.
United States Tax Court
T.C. Memo 1959-175; 1959 Tax Ct. Memo LEXIS 75; 18 T.C.M. (CCH) 765; T.C.M. (RIA) 59175; August 31, 1959
*75 David Greer, Esq., 60 State Street, Boston, Mass., for the petitioners. Manning K. Leiter, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined deficiencies in gift tax for 1936, 1937, 1938, 1940, 1941 and 1942 of $1,365, $2,850, $1,275, $637.50, $3,506.25 and $2,250, respectively. By amended answers respondent claimed increased deficiencies in gift tax of $362.50, $2,193.75 and $950 for the years 1940 through 1942, respectively. The issues to be decided are: (1) Whether any part of the gifts made during the years in issue were gifts of a future interest; (2) whether gifts made in the years 1940 through 1942 were gifts in trust within the meaning of section 1003(b)(2), I.R.C. 1939; and (3) the value of each gift made during the years 1935 through 1938 and 1940 through 1942. Respondent has abandoned his claim for increased deficiencies and concedes that part of each gift made was a gift of a present interest. Findings of Fact The stipulated facts are found. Petitioners were, at the time of filing of the petitions, the duly appointed and acting executors of the last will and testament of Julien *76 W. Vose, hereafter called decedent, who died on August 3, 1943, a resident of Edgartown, Massachusetts. Petitioner Donald W. Vose is the sole surviving executor. During his lifetime decedent followed a practice of making substantial gifts to the members of his family. He consulted a lawyer in 1935 for advice about making provision for his family in the future. One of his purposes was to avoid income tax on the income which he had been giving them. As a result of his lawyer's advice decedent created what is known as the Vose Family Trust, hereafter called the trust, on December 25, 1935. He conveyed to the trustees a parcel of improved real estate in Boston, Massachusetts, which was covered by a lease calling for an annual rent of $25,000. Frank S. Lovewell, Leroy W. Vose and decedent were named as co-trustees in the trust instrument, which provided, among other things, that the trust was to be for the sole use and benefit of decedent during his lifetime and from and after his death for the use of such persons as he by deed or will appointed; that the trustees would pay the net income to decedent during his lifetime and after his death to such persons as he appointed by deed or will; *77 and that the trust was to terminate upon the death of the last born child of decedent or the survivor of his grandchildren living at the date of the creation of the trust, whichever event occurred later. The trust instrument further provided: "XIV. In addition to all other obligations hereunder, the Trustees shall from time to time upon the request of * * * [decedent], execute and deliver to him certificates of indebtedness in the form hereto annexed and marked 'A' in such amounts as he shall from time to time request and payable to such persons as he shall nominate, but not, in any event, in an aggregate sum of more than * * * $300,000.00 * * * and not during the calendar year 1935 in an amount in excess of * * * $100,000.00 * * * nor in any calendar year thereafter in an amount in excess of * * * $50,000.00 * * *." The form annexed to the trust agreement reads: "No. $ "THIS TO CERTIFY that "THE VOSE FAMILY TRUST is indebted to in the sum of Dollars 1.00 "to be paid out of the corpus of the trust upon its termination with interest at the rate of six percent per annum payable quarter annually. All obligations hereunder are payable only out of the corpus of the trust. This certificate *78 is personal to the Payee named herein and may not be transferred or assigned without the consent in writing of the Trustees of the Vose Family Trust endorsed hereon. [Ruled for signatures.]" On December 25, 1935, pursuant to the request of decedent, the trustees issued and delivered 10 certificates payable as follows: Face amount of
Payee
trust certificates
Anna E. Vose
$ 30,000
Elsie V. Lovewell
15,000
Leroy W. Vose
5,000
Edna V. Weston
5,000
Donald W. Vose
15,000
John S. Lovewell
10,000
Julien Weston
5,000
Virginia W. Besse
5,000
Marjorie B. White
5,000
Donna W. Vose
5,000
Total
$100,000 Pursuant to requests made by decedent after December 31, 1935, the trustees issued and delivered certificates as follows: Year issued
Face amount of
and delivered
Payee
trust certificates
1936
Anna E. Vose
$5,000
1936
Edna V. Weston
5,000
1936
Leroy W. Vose
5,000
1936
John S. Lovewell
5,000
1936
Donna W. Vose
5,000
1937
Anna E. Vose
5,000
1937
Edna V. Weston
5,000
1937
Leroy W. Vose
5,000
1937
Dennise Vose
5,000
1937
Donna W. Vose
5,000
1938
Anna E. Vose
5,000
1938
Elsie V. Lovewell
5,000
1940
Leroy W. Vose
5,000
1941
Anna E. Vose
5,000
1941
Elsie V. Lovewell
5,000
1941
Dennise Vose
5,000
1941
Donna W. Vose
5,000
1941
Drucilla B. Vose
5,000
1942
Anna E. Vose
5,000
1942
Dennise Vose
5,000
The *79 relationship of each of the payees to decedent was as follows: Payee
Relationship
Anna Vose
Wife
Elsie V. Lovewell
Daughter
Leroy W. Vose
Son
Edna V. Weston
Daughter
Donald W. Vose
Grandson
John S. Lovewell
Grandson
Julien Weston
Grandson
Virginia W. Besse
Granddaughter
Marjorie B. White
Granddaughter
Donna W. Vose
Great granddaughter
Dennise Vose
Great granddaughter
Drucilla B. Vose
Granddaughter-in-law None of the payees ever paid any money or property in exchange for the certificates. After the execution and delivery of the certificates, the trustees made payment of the designated 6 per cent interest to the payees out of the trust income. The balance of the trust income was paid each year to decedent. Prior to his death decedent managed the real estate which was the corpus of the trust. At the time of his death a mortgage in the amount of $30,000 on the property held in the trust was outstanding. The fair market value of the corpus of the trust at the date of decedent's death was $250,000, less the mortgage of $30,000, or $220,000. The following distributions were made by the trust to decedent and to the holders of the certificates: Certificate
Year
Decedent
holders
1936
$18,051.16
$ 7,500
1937
19,551.16
9,000
1938
19,251.16
9,300
1939
18,951.16
9,600
1940
18,841.56
9,900
1941
15,547.10
12,900
1942
9,221.81
13,500
1943
5,338.78
13,500
Elsie *80 V. Lovewell, born July 27, 1890, is the last born child of decedent. The date of birth of decedent was October 5, 1860. The dates of birth of the grandchildren living on the date of creation of the trust are: Donald W. Vose
December 27, 1911
Julien V. Weston
March 18, 1915
Marjorie B. White
February 10, 1916
Virginia W. Besse
March 9, 1921
John S. Lovewell
May 25, 1921
On March 16, 1936, decedent filed a gift tax return for the calendar year 1935 in which he reported gifts of the 10 certificates issued on December 25, 1935. The value of these certificates, which were of a total face amount of $100,000, was reported as $60,000 on this return. After claims of annual exclusions totaling $32,000 and a specific exemption of $28,000, the gift tax return for 1935 reflected no net gifts. Decedent did not file any gift tax returns for the years in issue. Leroy W. Vose, then one of decedent's executors, filed gift tax returns for decedent covering the years in issue on September 10, 1954. Each return stated: "These were gifts of present interest and not taxable because in each case of a value of less than the statutory exemption. The value in each case was not in excess of 80% of the face amount." Total *81 annual exclusions of $25,000 were claimed on each return and net gifts for each calendar year were listed as "None." The trustees filed a Petition for Declaratory Judgment in the Probate Court of Dukes County, Massachusetts, to which they attached the Declaration of Trust and the last will of decedent. After reciting the material facts, the petition states: "7. The said provisions of Clause 4 of said will constituted an exercise by the said Julien W. Vose of the power of appointment reserved by him under the said Declaration of Trust dated December 25, 1935. "8. Your said petitioners are in doubt as to the validity and legal effect of the so-called Certificates of Indebtedness issued by them as above stated. A controversy has arisen as to whether said Certificates are valid debts or obligations of the Trust or as to whether the legal effect of them was to create merely equitable beneficial interests in the trust fund, or whether they are void and of no effect whatsoever, and whether in any event they were subject to the power of appointment reserved by the grantor so that any indebtedness or other interest represented by said Certificates were extinguished by the exercise by Julien *82 W. Vose of the said power of appointment reserved by him under said trust instrument. Your petitioners are also in doubt as to whether said Certificates of Indebtedness became payable upon the death of Julien W. Vose or only upon the occurrence of the event specified in Clause VIII of the said Declaration of Trust, or only upon the occurrence of the event specified in paragraph C of said will, or at some other time. "9. That a declaratory judgment and declaratory relief by reason of the aforesaid circumstances is hereby sought in order that relief be afforded your petitioners from the existing uncertainty with respect to the rights, demands and legal relations existing among the various parties interested as aforesaid. "WHEREFORE your petitioners pray that this Court determine and adjudicate the legal effect of said so-called 'Certificates of Indebtedness' issued by your petitioners as Trustees under said Declaration of Trust dated December 25, 1935." The Dukes County Probate Court entered a decree thereafter in which it found and determined: "That the certificates of indebtedness issued from time to time by the Trustees under said Declaration of Trust in the aggregate face amount *83 of Two Hundred Thousand Dollars ($200,000) constitute valid obligations of said Trust enforceable, according to their tenor, in law and in equity as a first charge against and encumbrance upon the corpus of the Trust; "That the aggregate face amount of said certificates of indebtedness is payable out of the corpus of the Trust as a first charge thereon at the time provided for termination of the Trust in Clause Eight of said Declaration of Trust; and that interest is payable quarter-annually on said certificates of indebtedness at the rate of 6 per cent per annum; "That the execution and delivery of the certificates of indebtedness to the certificate holders constituted an irrevocable appropriation of the corpus of the Trust to the extent of the aggregate face value of said certificates at the time of their execution and delivery and the corpus thus appropriated was accordingly not subject to or affected by the exercise of the general power of appointment reserved by said Julien W. Vose. The proceeding in the probate court was not collusive. Notice of the hearing in the cause was given to all interested parties. A guardian ad litem was appointed to represent the interest of minors *84 who held certificates, and of noncertificate holders and persons unascertained or not in being. Oral testimony was given and stipulated facts were presented to the probate court. For purposes of the gift tax, the value of the interest represented by each certificate on the date it was given was its face amount. The gift of each $5,000 certificate was a gift of a present interest and a future interest to the following extent: Present
Future
Issue date
interest
interest
12-25-35 and 1936
$4,540.30
$459.70
1937
4,523.35
476.65
1938
4,505.75
494.25 In 1935 the present interest in each gift of a trust certificate of face amount greater than $5,000 exceeded the allowable annual exclusion. Opinion Respondent's position that a part of decedent's gifts is not covered by annual exclusions [1] is founded on two separate propositions: One, that the 1940-1942 transfers being "gifts in trust" [2] could not be excluded to any extent; and the other, that a part of the 1936-1938 transfers was "future interests" and hence excludable only in part. [3] *86 The complicating factor of this record is that what decedent bestowed on his donees was "certificates of indebtedness" purporting to be obligations of a trust which he had *85 created, of which he was nominally the sole income beneficiary, over the final disposition of which he expressly retained an unconditional and general power of appointment, and which was not to terminate until some definite but presumably unascertainable future time when the survivor of his living children and grandchildren should die. The obligations bore current interest of 6 per cent but the principal was payable only on termination of the trust. We have the benefit of two decisions dealing with the effect of this arrangement. The local probate court in a decree by which we are bound, Freuler v. Helvering, 291 U.S. 35; Estate of Julien W. Vose, 20 T.C. 597, regarded the obligations as "enforceable * * * in law and in equity as a first charge against and encumbrance upon the corpus of the Trust," the face amount being "payable out of the corpus of the Trust as a first charge thereon"; and held that the delivery of the certificates "constituted an irrevocable appropriation of the corpus of the Trust" to that extent, "the corpus thus appropriated" being thereby removed from the power of appointment reserved to the settlor. See Estate of Julien W. Vose, supra at 600-601. (Italics added.) Of course, the conclusion of the local court that these were "obligations" of the trustees is not inconsistent with the concept that they represented an "interest" in the trust itself. And in Estate of Julien W. Vose, supra, we held that in view of this construction, no part of the appropriated corpus was includible in decedent's *87 estate: "We think it has been established that the decedent irrevocably made gifts, during his lifetime, of interests in the portion of the corpus and income of The Vose Family Trust which $200,000, principal amount, of trust certificates represents, * * *." Petitioners insist, we think rightly, that this determination is binding between the present parties. See Otto T. Mallery, 42 B.T.A. 793; Ernest Strong, 7 T.C. 953. The donees of the certificates were thus made "beneficiaries" of the trust by "the surrender by the donor of the benefit or power reserved to himself." [4] *88 Helvering v. Hutchings, 312 U.S. 393, 396. Although the "interest" which decedent gave them was not dependent upon the trust's income, their right to principal was carved out of the corpus of the trust not only as to interest thereon but more significantly by removing from decedent both the benefit and the power which he had originally retained. We think it follows that the 1940-1942 certificates were in substance and legal effect gifts in trust. Estelle May Affelder, 7 T.C. 1190. As to whether any part of the 1936-1938 gifts was of future interests, and therefore not excludable, respondent's concession that the 6 per cent "interest" was a present interest narrows this question down to whether the gifts of principal were present or future interests. Petitioners contend that our prior holding, Estate of Julien W. Vose, supra, that the certificates in question "were (1) valid obligations of the trust; (2) a first charge against and encumbrance upon the trust corpus; (3) payable as a first charge out of trust corpus upon the termination of the trust; and (4) that interest on the trust certificates was payable quarter-annually" is binding on the parties in this case. Respondent does not argue otherwise. However, petitioners further contend that the certificates, being valid obligations of *89 the trust, are "contractual rights such as exist in a bond or note, which are specifically excluded from the definition of 'future interest'" by respondent's regulations.[5] *90 It is here that petitioners are in error. The certificates in issue were issued without consideration. They are payable at some indefinite time in the future. Furthermore, as petitioners state in their brief, "the certificates by their terms cannot be transferred or assigned without the written consent of the Trustees. There is no way to tell whether at any given time the Trustees would consent to the sale of a certificate." Respondent's regulations seem to us to have been designed to cover notes and bonds which, although perhaps not containing all of the attributes of negotiable instruments, are at least definitely enforceable legal obligations payable on a day certain and immediately disposable by the obligee. Cf. Ryerson v. United States, 312 U.S. 405; Dora Roberts, 2 T.C. 679, affd. (C.A. 5) 143 Fed. (2d) 657, certiorari denied 324 U.S. 841. It is only in such a case that the donee has "the right presently to use, possess or enjoy the property." Fondren v. Commissioner, 324 U.S. 18. The final issue is one of value. Petitioners contend that the measure of value in this case "is the price at which * * * [the certificates] would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell." Regs. 108, sec. 86.19(a). Some of the evidence tends to show that certain purchasers would not have been "willing buyers" at more than 20 per cent of face value for the certificates when they were issued. Petitioners would have us conclude from this that the fair market value of each $5,000 face amount certificate was $1,000, or, in any event, not in excess of $4,000. The evidence, however, indicates that the low valuation which petitioners attribute to *91 the obligations is due to the creation of the certificates as "a family deal." Petitioners presented nothing which would tend to show that the payees of the certificates would have been "willing sellers" at 20 per cent or even 80 per cent of face value. It is not sufficient to conclude, as this would indicate, that the gifts thus had no ascertainable fair market value. Cf. Burnet v. Logan, 283 U.S. 404. We must arrive at some definite figure. Ithaca Trust Co. v. United States, 279 U.S. 151. Respondent determined that each certificate had a value equal to its face amount of $5,000. He contends that decedent effectively disposed of $200,000 during his lifetime and that the gift tax should be measured by this sum. And it is inescapable that decedent thus permanently eliminated this amount from his gross estate, Estate of Julien W. Vose, supra, even though the use of certificates as the method of disposition may have made the gifts less easily marketable for purposes of sale. As respondent points out in his excellent brief, the effect of the estate tax decision, Estate of Julien W. Vose, supra, was to eliminate from decedent's taxable estate the full face amount of these obligations. *92 It was the purpose of the gift tax to deal with transfers which accomplish a removal from property taxable at the decedent's death. Burnet v. Guggenheim, 288 U.S. 280; Estate of Sanford v. Commissioner, 308 U.S. 39. It is consistent with the holding in the estate tax case that on the present facts this property should be given a value commensurate with what was found to be free from tax on decedent's death. Under the peculiar facts of this case, respondent's method of valuation impresses us as being more reasonable than petitioners'. It may be that if the assets underlying the obligations had been worth less than the face amount of the certificates outstanding during any of the years in issue, or if the interest payable had been inordinately low, a different conclusion would be indicated. No such evidence was introduced and the contrary seems to be the accepted fact. Petitioners have not met their burden of proving error in the value determined by respondent. Halsted James, 3 T.C. 1260; affirmed per curiam (C.A. 2) 148 Fed. (2d) 236. Having found that the combined present and future interests of each certificate had a value equal to its face amount of $5,000, there remains to *93 be decided what portion of that value is attributable to the present interest. LaFortune v. Commissioner, (C.A. 10) 263 Fed. (2d) 186, 190, affirming 29 T.C. 479. Respondent originally determined that there was no present interest which to value. He now concedes that the present interest of each certificate had a value of between $4,505.75 and $4,540.30, depending on the year of the gift. [6] *94 It is petitioners' burden to prove a value in excess of these amounts. If the present interests were not susceptible of valuation, or had no value, petitioners will not benefit by the exclusion. Jennie Brody, 19 T.C. 126. Petitioners have made no attempt to meet this burden, their sole argument in regard to value being directed toward the certificates as a whole. The future interests existed and were worth something, and we cannot say that respondent erred in not attributing less value to them than he did. Decisions will be entered under Rule 50. Footnotes
1. Sec. 504(b), Rev. Act of 1932; sec. 1003(b), I.R.C. 1939↩. 2. "SEC. 1003. NET GIFTS. "(b) Exclusions From Gifts. - "* * * "(2) Gifts After 1938 and Prior to 1943. - In the case of gifts (other than gifts in trust or of future interests in property) made to any person by the donor during the calendar year 1939 and subsequent calendar years prior to 1943, the first $4,000 of such gifts to such person shall not, for the purpose of subsection (a), be included in the total amount of gifts made during such year." ↩
3. "SEC. 504. NET GIFTS. [Rev. Act of 1932] "(b) Gifts Less Than $5,000. - In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."
4. "* * * A gift to a trustee reserving to the donor the economic benefit of the trust or the power of its disposition, involves no taxable gift. It is only upon the surrender by the donor of the benefit or power reserved to himself that a taxable gift occurs, * * * and it would seem to follow that the beneficiary of the trust to whose benefit the surrender inures, whether made at the time the trust is created or later, is the 'person' or 'individual' to whom the gift is made." ( Helvering v. Hutchings, supra.↩)
5. Regulations 108. "Sec. 86.11. Future interests in property. - * * * The term [future interest] has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payment in the future. But a future interest or interests in such contractual obligations may be created by the limitations contained in a trust or other instrument of transfer employed in effecting a gift. * * *"
6. Respondent arrived at these amounts by computing the present worth of $5,000 as of January 1 of each year in issue according to the Actuaries' or Combined Experience Table of Mortality with interest compounded annually at 4 per cent. The amount so computed was subtracted from the face value of each certificate to arrive at the value of the right to "interest." Respondent admitted error on brief in attempting to compute the present worth of a $300 (6 per cent of $5,000) annuity payable in quarterly installments according to the same table at the same interest rate because such a computation resulted in a figure which substantially exceeded the face value of the certificates.